284                PEOPLE v. ABBOTT.                [Sup. Ct.

[No. 10,363.]

# THE PEOPLE v. GEORGE W. ABBOTT.

LARCENY OF BANK CHECK.—A was instructed by a bank to purchase sil-
ver for its account; and in order to provide him with funds to purchase the
silver—he having none in the bank—the bank certified and delivered to him
a check drawn by him on the bank.   The silver was not purchased for the
bank, but A used the check for his own purposes.   *Held*, that if A took the
custody of the certified check with the intention of stealing it, he was guilty
of the larceny of the check.
SAME—OWNERSHIP OF CHECK.—In such case the check did not become the
property of A, but remained the property of the bank.

APPEAL from the Municipal Criminal Court of the City and
County of San Francisco.

The facts are fully stated in the opinion.   The plaintiff ap-
pealed.

*D. J. Murphy*, for Appellant.

*Geo. B. Merrill*, for Respondent.

By the Court, WALLACE, C. J.:

The prisoner having been found guilty by the jury of the
offense of grand larceny, in stealing a certified check alleged in
the indictment to have been the property of "The Anglo-Cali-
fornia Bank (Limited)," a corporation existing and doing
business in that name, was awarded a new trial by the Court
below, and this appeal is prosecuted by the People from the
order granting the new trial.

The motion was based upon many grounds, but a careful
examination of the record discloses that, with the exception of
the one which will be presently considered, none of them find
any support in point of law or fact, and they will not, therefore,
be further noticed.

The indictment alleges that the prisoner did feloniously steal,
take, and carry away a certain written instrument, the property
of the Bank, which written instrument was in the words and
figures following:

" No. 284.]               SAN FRANCISCO, February 19th, 1878.
" The Anglo-California Bank (Limited)—Pay to Cash, or
bearer, Twenty Thousand Dollars ($20,000) gold.

"GEO. W. ABBOTT.
" Certified Feb. 19th, 1878.    G. GRANT, Teller."

And the principal point made at Bar, and upon which it is
understood that the Court below granted the new trial, is that
it did not sufficiently appear at the trial that the instrument set
forth in the indictment as the subject of the larceny was the
property of the Anglo-California Bank.

The circumstances shown at the trial were that on the day
of the date of the instrument set forth in the indictment the
prisoner, who had been accustomed for some two years next
theretofore to act as the broker of the Anglo-California Bank in
the purchase of silver for its use in its business, stated to the
cashier of the Bank that he, the prisoner, could buy a certain
amount—some twenty thousand dollars—of silver from the firm
of Hodge & Co., and was thereupon instructed by the cashier
to make the purchase.    For the purpose of providing the
money to be used by the prisoner in effecting the transaction,
the prisoner immediately drew the check set forth in the indict-
ment, which was thereupon *certified* by the Bank in the usual
form and delivered to the prisoner, who took it away with him
for the ostensible purpose upon his part of using it in the proposed
purchase of silver for the Bank; but on the same day he used
it in a purchase upon his own account from the Nevada Bank
of some twenty thousand dollars and upwards in currency.    The
prisoner thereupon fled the country with the proceeds, or most
of the proceeds, of the check, being the currency so purchased
by him, but was subsequently arrested at Acapulco and returned
to this State.    The Nevada Bank subsequently demanded and
received from the Anglo-California Bank the amount of the
check in due course.

It may be conceded, as claimed for the prisoner, that a mere
check drawn against the funds of the drawer is not the subject
of larceny by the latter; for while it remains in his hands it is
his property.    If the check be found in the hands of the bank,

it is presumptively to be considered as having been paid out of the funds of the drawer previously deposited with the bank. If it, however, be an overdraft, or its payment an advance made by the bank to the drawer, the bank may show that fact. In either case the check may be said to be the property of the drawer. In the former case the bank has the right to retain the possession of the check until it has obtained in some way the acknowledgment of the drawer that the bank has rightfully paid the amount out of the fund of the drawer on deposit with the bank. This is ordinarily effected by the balancing of the bank book of the drawer—which constitutes a statement of the drawer's account with the bank—when the check is usually returned to the drawer. In the latter case—that is, when the check represents an overdraft—the bank may rightfully retain the check in its possession, as part of the evidence of its claim against the drawer for repayment, until the indebtedness is discharged. But we think that it cannot be maintained that the check mentioned in the indictment was in any sense the property of the prisoner. When it was appropriated by the prisoner, it bore upon its face the acceptance of the bank upon which it had been drawn. This acceptance amounted to an unconditional undertaking upon the part of the Bank to pay to the holder the sum named in the check. It amounted in this form to an absolute promise upon the part of the Bank—the acceptor —to pay to the holder, irrespective of the actual condition of the drawer's account with the Bank. This is the rule by which the rights of an innocent holder of the certified check would be determined. But as between the accepting bank and the prisoner in this case, the certified check did not create such an obligation in favor of the latter, nor any obligation to pay to him, or on his account, or for his benefit. The check had not been drawn against the funds of the prisoner in the Bank, (he had none) nor was it an overdraft, or intended by the parties as an advance to the prisoner; it was in effect merely a check drawn by the Bank upon itself for its own business purposes, and intrusted by it to the prisoner, to be applied to those purposes. As between the prisoner and the Bank, the certified check, while it remained in the hands of the prisoner, was

therefore the property of the Bank only—as much so as if it had been in the hands of its messenger, or other servant or employee, who had been intrusted with it by the Bank for a designated purpose. In such a case, if the servant or employee should take the custody of the accepted check, *animo furandi,* the taking would amount to a larceny of the property of the Bank within the intent of the statute, and to this effect the jury were correctly instructed by the learned Judge of the Court below. Under this instruction, the jury found the prisoner guilty; and the circumstances appearing at the trial, wholly uncontradicted, fully support the verdict.

The order awarding a new trial is therefore reversed, and the cause remanded to the Court below, with directions to proceed to judgment on the verdict.