## KETCHUM v. UNITED STATES.
### No. 6514.

United States Court of Appeals for the District of Columbia.

Argued Jan. 6, 7, 1936.

Decided Feb. 17, 1936.

Harry T. Whelan and William B. O'Connell, both of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and H. L. Underwood, Asst. U. S. Atty., both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

PER CURIAM.

Appellant was tried and convicted of rape and robbery. The complaining witness, a woman employee of the Veterans' Bureau at Washington, identified him as the person who had committed the assault and robbery. Appellant denied absolutely all knowledge of the crime and undertook to show by his own evidence and that of other witnesses that he was miles away when it happened.

We have examined the evidence with care and are satisfied that it justified the verdict of guilty. Indeed, we think no other verdict properly could have been returned.

Only one ground of error is pressed. It relates to the effort of the District Attorney to impeach certain of appellant's testimony given by him in his cross-examination. The circumstances were these:

When appellant was on the stand and was being cross-examined by the District Attorney, he was asked:

"Q. Didn't you deny to Officer Pilkerton that you had been in that vicinity, with your car or alone? A. No, sir; I did not.

"Q. Didn't Officer Pilkerton say that he had seen you there at least once, and that your car was parked in the vicinity of that spot, and that you were watching a couple?"

There was objection to the question, on the ground that it was improper, irrelevant, and prejudicial. The objection was overruled and exception allowed, and the witness answered:

"A. He told me that he saw me in there spotting couples, but he never did."

When Officer Pilkerton was put on the stand, he testified that the next day after the arrest he talked to appellant and "I asked him whether I had ever seen him be-

fore, if he could recall me talking to him about a week before Christmas up on the hill above Hill Crest Drive. \* \* \* He said he did not. I asked him whether I had seen him on Ridge Road during the Christmas holidays. \* \* \* And he admitted being on Ridge Road, but he denied ever seeing or talking to me near Fort Baker Drive, about a week before Christmas, 1934." (Hill Crest drive, Ridge road, and Fort Baker drive are all in the same immediate neighborhood.)

The officer was then asked, "Had you seen him there?" and answered, "Yes, sir," and there the inquiry stopped.

Examination of the statements of appellant and of the officer will show that they were not in conflict, but in agreement. Appellant admitted the officer talked to him, admitted the officer said he had seen him "spotting couples," admitted he had been frequently in the neighborhood in question; but denied he was there "spotting couples." The officer, when he was put on the stand, did not contradict any of these statements. And so, as it turned out, there was nothing in the officer's statement which impeached or contradicted the evidence of appellant, and all that was elicited in this respect as the result of the cross-examination of appellant and the examination of the officer was the statement of the officer that he had seen appellant two or three weeks before the assault at or near the place.

Since appellant himself had previously testified that he lived in that neighborhood and frequently hunted all over the place, it is difficult to see in what respect the evidence was material from the government's point of view or prejudicial from appellant's, and in this view the only question which can arise out of the incident is whether the questions asked appellant, in the effort to lay a foundation for impeachment, were in themselves so improper as necessarily to prejudice his rights. We do not think they were. Appellant was defending on the ground that he was somewhere else than the place of the assault when it occurred. The evidence of the complaining witness was that he was loitering around the place in his automobile when she met him prior to the assault. In these circumstances, we think it was permissible to show, if it could be shown, that appellant had a habit or custom of frequenting the particular neighborhood in question. His comings and goings, in relation to the place of the crime, at a time not too remote, were proper subjects of inquiry. And, if as the result of the inquiry criminal tendencies on the part of the accused were incidentally revealed, that fact would not render the evidence inadmissible. Means v. United States, 62 App.D.C. 118, 65 F.(2d) 206, 207. But here neither questions nor answers can, by any stretch of the imagination, be said to reach that degree.

On the whole case we are satisfied that the whole evidence unmistakably points to appellant's guilt, and we think there was no error which would justify our reversing the judgment and remanding the case for a new trial. Moore v. United States, 150 U.S. 57, 14 S.Ct. 26, 37 L.Ed. 996.

Affirmed.